Your argument is 14-1820, Integrated Technology v. Rudolph Technologies. Good afternoon, Your Honor, and may it please the Court. I'd like to address three issues here in this case where fees were awarded after a remand. Number one, there was an error because the district court on remand failed to consider the totality of the circumstances as they had dramatically changed post-remand. Before the remand, the Court awarded fees based on the belief that three out of four accused products willfully infringed their patent. After this Court's decision, page 28, you say, in a short decision containing one paragraph of conclusory analysis, the Court found that, quote, most, close quote, facts supporting the original fee award had, quote, no connection, close quote, to the vacated willfulness finding. However, I looked at the district court's 2014 order at page 2, which says, in a brief, the record establishes the following, colon, Rudolph hid its infringement for years, provided false discovery responses, filed summary judgment papers even though it knew its product infringed, argued a never fully explained theory that ITC did not own the underlying patent, and during and after trial played semantic games regarding what its machines did and what functions were important to it and its customers. And then ellipsis, the striking weakness of Rudolph's position regarding its pre-2007 PRVX machines as well as the unreasonable manner in which it litigated the case through trial and post-trial motions satisfy the Supreme Court standard under 285 for awarding fees. Did you read the decision? Of course, Your Honor, and this is all in the one paragraph, but there's no cites to the record here for the vast majority of these. And as we went through in our brief, for example, the discovery responses,  ITC did not cite any discovery response that wasn't true. We showed in our brief that this issue of the ownership, in fact, it was a legitimate issue because ITC amended their complaint to add a holding company as at least a co-owner, if not the sole owner of the patent, and their vice president testified that holding company was the owner. That's a key issue on damages because if the holding company owns the patent, under the PolyAmerica case, ITC gets no lost profits, and that's the only damages they have. So we went through those issues to show they weren't, excuse me. Can a prevailing party never engage in sanctionable litigation misconduct? I think, Your Honor, under 285 is the issue that we're here, if I can answer it in that kind of text. That says the prevailing party may get attorney's fees in exceptional cases, so it is only the prevailing party that would get attorney's fees. But there was a prevailing party here, at least with respect to the initial portion of the case, the summary judgment. Right, that's right. ITC is considered the prevailing party for that one product that was decided two years before trial. And our point is part of the abuse of discretion here by the district court in the legal era was failing to consider how that totality had changed. The first time around, the court said, you are still infringing even here after trial in 2012. You never stopped. Well, on remand, it's clear we actually stopped in 2007 when that original design that had been sold for years before the lawsuit was changed a few months after the lawsuit. But that had to do with the improper discovery responses, right? And that had to do with the summary judgment motion, which you lost on, right? Well, that's what I'm talking about. There is no citation in any place in the record that even as to that pre-'07 product. There was a misstatement in any discovery. They had a deposition of Mr. Subart in 2007. They don't point to any untruthful answers. He answered all the questions about that redesign and his finding of that contact in the first state element that was conceded in summary judgment. Well, that's your interpretation of his testimony, but that's not the interpretation she reached. She understood his testimony to suggest that he learned at the time he tested the product that they infringed. She did not interpret the testimony the way you would like me to. And even if I were inclined to go along with your interpretation, that is a fact-finding, how to interpret a witness's testimony, and I have to give deference to her fact-finding. I mean, what is the standard I'm reviewing her under here? I think that that's a very fair point, but the key here is under totality of the circumstances, that single question and answer have to be considered in the context. Well, no, but under the totality of the circumstances, she found this case exceptional because she thinks your witness, the CEO of the company accused of infringement, tested the product, admitted in his testimony, whether you agree with this interpretation or not, this is her fact-finding, admitted in his testimony that he tested the product and found that product infringed the patent. Then that same company continued to oppose litigation over the issue of infringement. Now, maybe this case only goes up until the 2007 summary judgment, the product that is the subject of the summary judgment. But certainly it seems to me that you have a very hard case to make, that she would be abusing her discretion if she found that portion of your behavior, that portion of the case, not your personal, you understand, I don't mean you personally, but that portion of the case exceptional and warranting fees. What would your argument be as to why that's not the case? The question is, was the litigation conduct reasonable? And what happened here is Rudolph had an expert, an engineering and software expert, look at the court's Markman construction of the means plus function clause of that software element, which is different from the one Mr. Subert talked about. And that Markman decision came out over a year after Mr. Subert checked that out, about a year after his deposition. He had no benefit of the court's means plus function construction that was disputed. And then that expert applied that to— But Mr. Subert didn't talk about in his deposition the means plus function element. That wasn't what he tested. He concluded in her factual determination that the company was infringing the product, and then there were subsequent oppositions. And, in fact, didn't you affirmatively follow your own summary judgment of non-infringement even after he had made that determination? He's the CEO of the company. I mean, it's not like, you know, Joe Schmo in the back garage. And so, you know, accepting that to be true, though, the question is, was there an objective basis to say that there was non-infringement under the actual facts regarding the operation of the software of the product, which there's no indication Mr. Subert evaluated against that means plus function clause? And I would submit that that was objectively reasonable. ITC hasn't contested that that in itself would be objectively unreasonable. Suppose that we—just suppose we don't agree with you, and that we conclude that at least with regard to that 2007 period up until that point in time that it was appropriate and legitimate for her to conclude the case was exceptional with regard not to the re-engineered product, but the product up until that point in time. Where are we now? Why don't you for a minute focus on what we ought to do if that's our conclusion. Well, then we have a whole different error here, and that's the failure to apportion, the failure to recognize that because there's no willfulness that the misconduct needs to be correlated to the fee award. While I would completely agree with your statement of the law, and I actually don't think I saw them disagreeing with your statement of the law either in that regard, the problem is you entered into a stipulation here. And when lawyers and parties enter into—and you, in fact, drafted it. And, again, I don't know if it's you personally, but you, the party you represent. And, of course, when interpreting a contract, if it's at all ambiguous, you interpret it against the drafter, right? Come on, I've got to have a first-year in here that can probably quote me some case. So when there's a contract, we interpret it against the drafter. You, your party, drafted this stipulation. And the stipulation says you're not going to contest the amount of $3.2 million. Yes, for all you law students who are wondering whether you'll be employed after this, $3.2 million for the attorney's fees. That's not the damages in the case. Those are the attorney's fees. So you affirmatively stipulated to that because you very politely said you don't want to cause anyone to have to go on to additional litigation. Right, to go through the itemization. The context of that was after the court, in view of those willfulness findings later reversed, said I grant ITC's motion. They get the entirety of their attorney's fees for the case. Now we'll turn to how much money that actually is. In that context, we entered a stipulation on the question pending, which is what are their total fees? That letter, construe it any way you'd like against us or for us, but it does say we agreed that that is the reasonable, or you're contending that's the amount you paid, and we'll accept that. You were saying you weren't going to contest something. Was that on the amount of fees? That was the entitlement. Associates spend so much money and deserve this hourly rate. Right, right, we're not going to have to go through all the itemization and figure out if it's 2.7 or something else. But we did preserve in that same letter the right to challenge their entitlement to the fee award, and that's exactly what we did on the first appeal. Got that decision reversed, vacated on attorney's fees, excuse me. And so then it came back, and now there's no willfulness, and now there's apportionment in their entitlement. The question is a different question now. What part of those total fees are now relevant to the misconduct apart from the willfulness finding? So that's a completely different context. I would say even today we don't dispute the totality of their fees. If they say their client paid them 3.25 million, fine. We're not trying to shirk that stipulation. The separate question now is what portion of those fees are reasonably related to the purported misconduct? And that stipulation doesn't absolve them from following the case laws you indicated, Your Honor, that they have agreed to, and the court didn't dispute that either. But the court found you bound by this stipulation. That is a clear error, Your Honor, that we are bound to a stipulation now absent willfulness when that relevant question is now apportionment. Did you make this argument to the district court? Yes. Because the district court, I think, as far as I know, and please correct me if I'm wrong, had one sentence, and they're bound by the stipulation. Right. The court just said we're bound very quickly, Your Honor. That's right. But we did present the Rambis case. We did state in our opposition. No, no, no. You argued to her that apportionment was appropriate. But where did you argue to her that we are not bound by the stipulation because of changed circumstances? I don't think we were really trying to say we're not bound by that amount, Your Honor. We're saying that the limited scope to that stipulation is to the amount of the total fees. And this is a separate question now about the apportionment issue. So that stipulation, whether you consider it to continue to be applicable or not, it simply doesn't answer the question right now. If I take your argument right now, you're saying you are bound by the stipulation as to the amount. And then the whole question is entitlement to what part of that stipulated amount. Well, we have a separate question now because there's no willfulness of what's the appropriate apportionment of their fees to the misconduct. That's just not what was stipulated to. That wasn't the issue at the time. Suppose your stipulation, which I know it doesn't in this case, but had read, we stipulate that if fees are awarded, $3.2 million is the appropriate amount, full stop. Suppose that had been your stipulation. What scenario would we be in now? Would you be bound by $3.2 million because she has decided fees are appropriate, even though she's decided arguably they're only appropriate for a portion of the case, not for the whole case? At what point, what is the language which binds you to no matter what, you're bound? I think maybe there's some more expansive language, Your Honor. I'm not sure if I'm totally being responsive. But I think the key here is that at the time of the stipulation, the court already said, I grant ITC's motion in its entirety because of willfulness. They get all their fees. Now the only issue remaining to determine is the amount of those total fees. That's the situation here. And I don't think it's fair to penalize the parties for trying to work on an agreement on that rather mundane task of figuring out that itemization. I think it's a fair reading that that's the only thing that was stipulated, too, that the total amount is that. Not that if there's no willfulness and if that's reversed on appeal a year later, we're bound by that as a number despite all that law-like rambus out there. That simply wasn't the issue at the time. Why don't we reserve the remainder of your button. We'll hear from Mr. Rebuttal and we'll hear from Mr. Ryland. Good afternoon. May it please the Court, Josh Ryland for ITC. We obviously believe that Judge Silver should be affirmed. And I think there are two things that came out in the first discussion here which are important. What Rudolph is really trying to do is get this court to re-review the fact-finding of the district court. Judge Silver is entitled to deference here. Well, let's move on to the stipulation, if you don't mind, and my colleagues can go after this if they wish. It seems pretty clear to me that at least tentatively that what they're agreeing to not contest is the reasonableness of the request for fees. I think a fair reading of that is if we're guilty, because we've seen plenty of cases where we say, okay, you're allowed attorney's fees, and then the parties spend another million dollars litigating exactly the amount of hours that were spent and the hourly rate and so forth. So it seems a perfectly reasonable way to construe this is to say, okay, if they're found liable and this case is found exceptional, they're not going to quibble over whether it's $3.2 million or $3.4 million or $2.9 million. But they say this agreement solely relates to the reasonableness of the dollar amount and does not in any way limit Rudolph's ability to contest or appeal ITC's entitlement to attorney's fees on appeal or otherwise, as may be appropriate. That seems to me to be a very, very, very broad reservation of rights, and certainly the circumstances now are significantly different. You don't contest, for example, that if the stipulation were not in effect, you would be entitled to a far, far, far smaller amount of attorney's fees based on the amount of the case that you now prevail under. Actually, we would contest that, Your Honor, and that's where I think the – where we diverge and where we've tried to bring out in the brief and what I'd like to explain is that there was one instance of Mr. Subart's conduct with respect to the PRVX machines pre-2007. Judge Silver talked about a pattern of misconduct that existed. While Mr. Subart's testimony was very important because it sort of let the cat out of the bag on everything, it wasn't one instance. When he testified at trial in 2011 that there was absolutely – that he tested the machines, that he found infringement, and the whole court heard it, the judge found it a startling admission for multiple reasons. Also, with respect to that admission, it's not the only time that they – that Rudolph tried to obfuscate what and how their machine worked. There's a reference there to a – But this all had to do with the summary judgment case and the damages that you prevailed on. The only portion of this case that you prevailed on was the pre-summary judgment stuff. Everything else got reversed on appeal. In other words, you lost. Absolutely. So all of the willfulness finding was reversed. The finding of infringement post – what is it, 2007? Yes. That was all reversed as well. So the only portion you prevailed on was this window period of time, which I don't know how long it was. Well, actually it's not much of a window period. It's a huge expanse of the case. It's at least half of the products at issue if you look at the verdict format was a – But that's all leading to pre-summary judgment. And I presume the vast portion of the $3.2 billion in attorney's fees were chucked up in the trial portion of this case rather than the initial summary judgment. I would say that it's fair that those fees would certainly track the course of the case. But what Judge Silver found wasn't that that was the isolated incident of misconduct. Litigation misconduct standing alone supports a fee award, and she found a pattern of misconduct from the beginning of the case to the end of the case. When Mr. Subert – You're not the prevailing party in that portion of the case. You're not entitled to fees using the language of 285. What's your response? I would say that we're still the prevailing party in this case, and we've prevailed on a lot of our claims. And I haven't heard from my opponent that we are not the prevailing party at the district court. They didn't oppose the fees based on that. They simply said that we weren't entitled to fees based on Rambis in trying to get out of the stipulation that we had. So I would say that we are entitled to fees as the prevailing party, first of all. So you're asking us to interpret the term prevailing party to mean if you win on any single little tiny aspect of the case, no matter how insignificant, no matter how early in the process resolved, that you are potentially entitled to all of your fees even if the case goes on four years beyond that and 99.9% of the fees are racked up in that process. Absolutely not, Your Honor. That's not – good. I'm really glad. Yeah. That's not the interpretation you're asking. We are not asking for that. So what is your interpretation then? Because you did only prevail on the pre-2007 portion. Which was the majority of the damages awarded. Not the majority. I'm sorry. It was at least half the damages awarded. Okay, but if that's true – Yes. We have no information on that. You're saying that. But all we have in the record is a stipulation about a total amount. Right. We don't know anything about the underlying amounts. And so if we believe – Are you saying that the majority of fees were incurred in connection with the summary judgment motion rather than in connection with the whole trial that occurred afterwards? No, I'm saying that Judge Silver looked at the entire case and was going to award fees and did award fees twice now for the entire case because of the litigation misconduct she had to endure. Here's how I read her opinion. I find five bases upon which she relied when she continued to hold this case exceptional. One, hid its infringement for years. The only infringement here was the pre-summary judgment infringement. You lost. You got reversed on the trial of infringement and post-damages. So that deals with the earlier stuff. Provided false discovery responses. The discovery occurred early on. Filed summary judgment papers even though it knew its product infringed. That all has to do with the prior period of time. Argued a never-explained theory of coverage under IDC. That's all the summary judgment stuff. And played semantic games regarding what its machines did, which all has to do with that earlier period of time. So it seems to me everything she pointed to has to do with the earlier period of time and all of the so-called litigation misconduct or everything they did had to do with the damages related to that period of time, not to the stuff that you lost on ultimately because it was reversed on appeal. And I understand, but I would disagree respectfully, Your Honor, because, for example, let's take the last one that you list. It's the played semantic games. That is a direct result of what happened in the injunction proceedings in this case. From the start of this case until the end of this case, Rudolph contended that it didn't do scrub. Scrub is an element of the claim that was required. In fact, it was the key element. Scrub testing when these pins scrape across when they're being tested, they said they didn't do scrub. When we got to trial, they had witnesses say, we don't do scrub. We don't do anything like scrub. Then when they lost, ultimately, after the jury verdict, they sent out a press release to all their investors through the SEC that says, we're going to remove scrub, which seemed odd in the sense that they removed something that they said they didn't do during the entire course of the trial in the case. And then when the judge was going to enter an injunction, Rudolph complained and said, whoa, whoa, whoa, we need to have scrub. So that's an example of this is what we've dealt with the entire case. Come on now. That is such an unfair characterization that it really bothers me. Because when they said, we don't do scrub, we don't do scrub, that's when they're saying they don't infringe. Now fast forward to the period of injunction. They've been found to infringe. So de facto, they've been found to do scrub. So at this point, they're saying, okay, well, if you're going to call this scrub, then we need time to remove this. We need time to fix our products. But they were arguing throughout that that, what they did, didn't constitute the infringing element. Only after it was found against them did they say, okay, well then we need time to fix it. And in fact, that was reversed on appeal, right? That was reversed on a prosecution history estoppel argument. And what I'm concerned about, and this actually ties back to an earlier question that you had, this is basically allowing an argument that if you win on one issue, that all litigation misconduct for the course of the case can be forgiven. And that's not what 285 stands for and that's not what the Supreme Court has said. Even under an abuse of discretion, so that clearly may influence our findings with regard to the first question, the only thing the district court said is to justify you're getting $3.2 million in attorney's fees rather than some smaller amount is there's a stipulation out there. So she didn't say, no, it's because it doesn't matter. The fee should cover the entire period because there was this extensive litigation misconduct. It seems to me on its face she relied exclusively on the fact, buying your argument that you're making to us today, that the stipulation is kind of a waiver and they stipulate it so they have to give us all the fees no matter what because that's what the stipulation says, right? Well, actually, Your Honor, Judge Silver does say on page 72 of the JA that she found two bases for the misconduct, both of which she believes met the Supreme Court standard under 285, the first being the weakness in their position on the PRVX machines pre-2007, the second being their litigation conduct through trial and through the post-trial, and both of those she said justified a fee award under 285. In addition, she said that either of them standing alone would justify it. She said that, but the problem is she didn't articulate anything in terms of me reading her very cursory bases. My reading of them, they quite frankly all go to the summary judgment and pre-summary judgment conduct, and even though she does have that sentence that said they continued through trial, she hasn't cited a single thing or articulated a single thing, and given our view of the law on apportionment, wouldn't the appropriate thing to do in this circumstance be to vacate and remand for her to provide the rationale, if she has one, for fees all the way through the case? And let me throw in, you'd agree we don't have in the record information sufficient to apportion at our level. We'd have to send it back one day. Absolutely, Your Honor. I would agree that we are not sufficiently set up to apportion this case, but we don't believe that it should have been apportioned because we interpret her rulings. And bear in mind, this is truly one of those cases that the Supreme Court referenced in Highmark where the judge lived with the case. She's had this thing for almost a decade. But the regional circuits say quite clearly that in awarding, and so does the Supreme Court, in awarding attorney's fees, the judge has to articulate her reasons. And if I interpret the five bases she gave as all going to the pre-2007 product and none of them going to the subsequent trial and everything else, that one errant sentence that says they behaved badly throughout, it doesn't get me there. It doesn't give me something I can review under any standard, even a very deferential one like abuse of discretion. And let me also point out that even if she can't award attorney's fees, for example, to a portion of the case you didn't prevail on, perhaps, aren't there all kinds of alternative options like 1927, Rule 11, discovery sanctions? I mean, she has at her discretion and disposal a heartland of possible ways in which to increase the number of the attorney fee award if that is really warranted, even if it's not under 285. Did you bring motions on any of those other bases? We did not bring motions based on 1927. Did you bring anything like a 37B2C motion? We did not, and that's a great question, Your Honor, because that actually appears in the blue brief. Rudolph was taking ITC to task for not bringing up these discovery issues. The problem with that argument is that we found out these were discovery issues while we're sitting in a courtroom trying the case six years later. That becomes a problem. So, no, we did not bring up a Rule 37 violation because Mr. Subart's admission that he actually tested and found infringement, which would have created documents. First came out at trial. First came out at trial. So it was hard for us to go back and redo discovery at that point because we're at the midway point of trial. I've always wondered about the results of a sanctions determination effect when it gets up on appeal because that's reviewed under an entirely different standard. Right. That must have felt like a very Perry Mason moment, right? When the CEO says, yes, I tested it. I mean, I don't know that in a patent case I've seen quite so clearly a Perry Mason moment. A bit of that double take. Young people don't even know who Perry Mason is, by the way. Hopefully you do. I do know who it is, and, you know, it was maybe a Scooby-Doo moment. Our eyes lit up. You're trying to relate to the young people. I'm doing my best. But, yes, Your Honor, it was. And so we believe that within our discretion Judge Silver looked at the case, has lived with the case, and determined that the full amount of fees was warranted. In addition, we bound ourselves to the stipulation and didn't go back on remand and say, and I know the law students may like to hear this as well, we could have asked for more. We could have asked for a lodestar theory. We're trying to do exactly what you mentioned, which is avoid spending a million dollars litigating legal fees. And when the judge saw the stipulation, she, in her determination, agreed that it was binding and awarded fees. Okay. Thank you. Thank you. Mr. McDonald, you've got a few minutes left. Thank you. With respect to the stipulation issue, I did want to direct your attention to page 18402 at footnote 1. In the briefing, we did address the stipulation issue and say that that did not preclude apportionment here. So that was in the briefing. I think there was a question about that. Also, to clarify, there was some issue about the half of the damages or fees. I think what counsel was saying about half of the dollar damages award related to the PREA 07 product. And the vast majority of those sales were before the lawsuit was brought. They brought the lawsuit on the sixth anniversary of the patent issuing, which is the longest they could wait to get maximum damages six years back. And most of those sales were before. They have nothing to do with the actual incurring of litigation fees in the case. It really had to do with a few pages in their summary judgment briefing. They didn't even go through the source code. Their expert was not able to read source code. They didn't compare the old device to the new. There's very little effort that they put into that old product. They termed in their own briefing and admission by us that we did meet that first state contact limitation. And based on that, the court granted that summary judgment two years before trial. The trial was only about products that wound up being not infringing. It was already decided the PREA 07 infringed. So we had two years' worth of fees going into the trial that had to do with those cases or those issues, those products that they lost on. Now, Your Honor, if I misspoke, I apologize. I didn't mean to say that that doesn't make ITC the prevailing party in the lawsuit. I only meant to say that that has a very significant impact on this apportionment issue. But I'd like to know your thoughts on that statutory interpretation issue with regard to prevailing party. If they are the prevailing party on one product but not with regard to the other, suppose that she did, and I'm not saying I interpret her opinion that way, but suppose that she did demonstrate litigation misconduct throughout trial, very detailed litigation misconduct. Would they be entitled to fees for that because they prevailed on that summary judgment portion of the case? But they weren't the prevailing party. So as badly as you behaved, I mean, it seems like she could go after you under 1927. There are lots of bases upon which she could award fees, but I'm a little nervous in a patent case where fees are hinged to prevailing party status when a case so cleanly as this one does divides the case in half between the portion they won in the beginning and the portion they lost in the end. I'm a little nervous to say it's okay for her to award fees all the way through because they won that early part. Right, and I think those issues that she tried to the extent there's anything here, and I agree with the Court. I think all of these were really infected by her original belief that that change was not sufficient. No, but I need to know precisely what you think. I know your red light's on, and we'll give you a chance to answer. About the interpretation of prevailing party, there are lots of cases, Supreme Court and otherwise, this is not the only statute in which those words appear. Do you think if they prevail on any portion of the case, everything is up for grabs or is only stuff up for grabs in the portion they prevailed on? I guess I'll have to look at, in my mind, the statutory language of 285. In exceptional cases, the prevailing party may, in the Court's discretion, get fees, and case law says that has to be a portion. So you've got a couple checks on the system there. One is does that make the whole case exceptional or not? And if it's one out of five products or one out of four products that was actually found to be infringing early on, I guess you have to ask maybe there was some exceptionality or something about the one product, but does that actually make the whole case exceptional? I would say not here when you look at that context and how much of the case had to do with things other than that original product design, number one. And number two, you do have that issue that it may award fees, not that it has to. And you have to take into account the totality of the circumstances, I think, as well, on whether you do award fees and how much of the fees you award. And certainly it comes into play within the four corners of 285, and your point's raised on that. Let me ask you this. If we vacate this and send it back down to the Court to look at the apportionment, is there anything that prevents the Court from looking back and saying, well, we have Rule 11 and we have Section 1927, and I can reconsider it under those standards? A counsel did raise the Court's inherent power, at least, because I know that's in the decision at the footnote on page 72. I believe they had a full and fair opportunity to raise those issues before, Your Honor. I think it would be totally inappropriate at this late stage. They had their chance to seek fees and list the reasons for those fees. I'm not saying your opposing party. I'm saying the Court on her own motion. Well, the Court's inherent power, then. That's what you're going to when the Court in this footnote already indicated that it declines to exercise its inherent power because it does not believe the case is sufficient or does not rise to the level necessary for an award under the Court's inherent powers. Nobody's challenging that finding here. So I think that would be inappropriate. Thank you. We thank both counsel and the cases submitted.